IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY HORTON. #413390      *

      Plaintiff,      *

v.      *   Civil Action No. JFM-16-2561

WEXFORD HEALTH SOURCES, INC.      *
BILL BEEMAN
JANICE GILLMORE      *
      Defendants.
     *****

## MEMORANDUM

### I. Background

On July 13, 2016, this case was removed to this court from the Circuit Court for Allegany County, Maryland. Larry Horton, an inmate incarcerated at the North Branch Correctional Institution ("NBCI"), filed this action. He alleges that he is a chronic care patient, receiving pain management care for severe pain arising from a broken back suffered when he was in military service. Horton claims he was denied the renewal of pain medication for eighteen days and seeks damages "arising out of the deliberate indifference to medical needs, malpractice by the defendants." ECF No. 2.

The court has examined Horton's opposition to the notice of removal, ECF No. 16, and finds that it was properly removed. Horton's claim that he was denied medication cites to "deliberate indifference" on the part of defendants. It therefore may be construed in part as a civil rights claim, filed pursuant to 42 U.S.C. § 1983, invoking this court's 28 U.S.C. § 1343 civil rights jurisdiction

Defendants have filed a motion to dismiss or, in the alternative, motion for summary

judgment. ECF No. 17. Horton has filed an opposition and defendants have filed a reply. ECF Nos. 19 & 20. The matter is ready for disposition; no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons that follow, defendants' motion, construed as a motion for summary judgment, IS GRANTED.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[1]

---

[1] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in

2

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167. The court is more than satisfied that given the exhibits presented here, all of which were provided to Horton, it has ample information with which to address the motions as filed for summary judgment.[2]

---

the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

[2] The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating the complaint, the court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also*

3

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter

---

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Horton is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

5

### III. Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[3] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

---

[3] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

6

risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicted...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F. 3d at 390, citing *Liege v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LaFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

The materials indicate that Horton is a forty-two year old man with a medical history significant for Hereditary Peripheral Neuropathy,[4] combinations of drug dependence excluding opioid type drug, unspecified, hyperlipidemia,[5] anxiety disorder, and hypertension. Defendants relate the following encounters Horton had with health care providers:

---

[4] Hereditary motor or sensory neuropathies refer to a group of nerve disorders that lead to weakness and wasting of the muscles generally below the knees, and in the hands, and that may be passed from parents to children. *See* http://peripheralneuropathycenter.uchicago.edu/learnaboutpn/typesofpn/hereditary/.

[5] Hyperlipidemia is an elevation of one or more fat proteins in the blood. It is commonly referred to as high cholesterol. *See* http://www.medicalnewstoday.com/articles/295385.php.

7

On December 27, 2015, Horton submitted a sick-call slip complaining of blood in stool. Less than two weeks later, on January 9, 2016, he filed another sick-call slip requesting to see an eye doctor. ECF No. 17-4, pp. 1-2. On January 11, 2016, Horton was seen in the chronic care clinic by Dr. Mahboob Ashraf for his complaint of pain radiating in both legs. *Id.*, pp. 3-5. The location of the pain was throughout the entire right leg. Dr. Ashraf reported that Horton had been started on Tegretol for pain relief, but this is not reflected in the record. Defendants state that Horton was prescribed Gabapentin[6] for his pain.[7] He was also prescribed Tramadol[8] for pain. Horton reported that the condition occurred regularly. His gait was unsteady and he used a cane. Horton reported that the condition was aggravated by standing, but relieved with medication and movement. Associated symptoms include dysarthria,[9] falling, motor weakness, paresthesia,[10] and tingling. ECF No. 17-4, pp. 3-5. Horton's physical examination found him to be in no apparent distress and was otherwise unremarkable. *Id.*

---

[6] Gabapentin or Neurontin is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. Gabapentin is used in adults to treat nerve pain. *See* http://www.drugs.com/gabapentin.html.

[7] The dispensing of the prescription for Gabapentin is reflected in the Medication Administrative Record. ECF No. 17-4, pp. 30 & 38.

[8] Tramadol is used to treat moderate to severe pain. *See* https://www.drugs.com/tramadol.html.

[9] Dysarthria is a condition in which the muscles you use for speech are weak or you have difficulty controlling them. Dysarthria often is characterized by slurred or slow speech that can be difficult to understand. *See* http://www.mayoclinic.org/diseases-conditions/dysarthria/basics/definition/con-20035008.

[10] Paresthesia is defined as an abnormal sensation of the body, such as numbness, tingling, or burning. *See* http://www.disabled-world.com/health/neurology/paresthesia.php.

On January 13, 2016, Horton submitted a sick-call slip complaining of rectal bleeding. *Id.*, p. 6. Ten days later on January 23, 2016, he filed a sick-call slip which sought the renewal of his shampoo, Colace, saline nasal spray and Lisinopril. *Id.*, p. 7. On February 3, 2016, Horton submitted a sick-call slip complaining about hemorrhoids and presented stickers to renew his nasal spray, eye drops, hemorrhoid ointment and suppositories, skin lotion and shampoo. *Id.*, p. 8.

On February 8, 2016, Horton submitted sick-call slips complaining of hemorrhoids and the need to renew "all" his medications. *Id.*, pp. 9-10. Three days later on February 11, 2016, he was seen by Nurse Ricki Moyer at sick-call. He complained that he needed several medications renewed before the end of the month; that he was to receive a colonoscopy, but missed it due to a court date; and that his medication was not helping his hemorrhoids. *Id.*, pp. 11-12. The physical examination was unremarkable, no colonoscopy was noted in Horton's electronic medical record, and he was referred to a provider. His over-the-counter medication was renewed. *Id.*

On February 14, 2016, Horton submitted a sick-call slip seeking the renewal of his Colace, Sebex shampoo, and saline nasal spray. *Id.*, p. 13. On February 14, 2016, he filed yet another sick-call slip stating that his medication needed to be renewed, that it was his fifth request, and his hemorrhoids were bleeding, ECF No. 17-4, p. 14. On February 21, 2016, Horton was seen by Registered Nurse Practitioner Krista Bilak to renew his medication. His Sebex shampoo, saline nasal spray, hemorrhoid ointment Flomax, acetaminophen, Lopid, Ranitidine Hel, and lubri-skin lotion were renewed. *Id.*, p. 15-16. That same day he filed a sick-call slip requesting to see his medical records. On March 3 and March 12, 2016, he filed sick-

call slips complaining of a sore throat and seeking the renewal of his pain medications. *Id.*, pp. 17-19.

On March 14, 29016, Horton was seen by Nurse Cindy Fuente for Chronic Care Clinic ("CCC") preparation. The following date, March 15, 2016, he was seen by Nurse Dennis Martin for cold symptoms and reported that his Tramadol prescription was to expire in two days. Renewal of Horton's Tramadol prescription was referred to a provider. *Id.*, pp. 20-22. On March 18, 2016, he was seen by Dr. Ashraf at provider sick-call. He complained of hemorrhoid pain and sought the renewal of his hemorrhoid medication. He denied any other complaints. *Id.*, pp. 23-24.

On March 31, 2016, Horton was seen by Dr. Ashraf in the CCC. In response to his complaints of pain, it was noted that he had been prescribed Tramadol 50 mg., two tablets twice daily, as well as Acetaminophen. *Id.*, pp. 25-27. Horton was found to be in no apparent distress and his physical examination was otherwise unremarkable and normal upon assessment. His Tramadol was renewed for a 90-day period from March 30, 2016 to June 30, 2016. *Id.*, pp. 27-29.

Horton's medication administration records ("MAR") from September 2015 through June 2016, show that his Tramadol prescription ran from September 23, 20155 to January 23, 2016, and was then changed to be from November 7, 2015 to March 17, 2016. *Id.*, pp. 34 & 42. His Tramadol prescriptions were administered regularly from September of 2015 to the end of June of 2016, with the exception of a two week period, from March 18 to March 31, 2016. The Tramadol prescription recommenced on April 1, 2016. ECF No. 17-4, pp. 34-36, 40, 42, 44, 48, 50, 56, 58, 64, 72, 78 & 80. Defendants further assert that Horton's prescription for acetaminophen was not stopped and remained open for a "keep on person" supply of tablets

available to Horton at his request through the sick-call process. ECF Nos. 17-5, Beeman Aff. & ECF No. 17-6, Gilmore Aff.

In his opposition, Horton argues that it was not his intention to file a § 1983 complaint, but he was attempting to seek damages from a successful administrative remedy, in which the Warden at NBCI found his grievance meritorious in part. ECF No. 19-1.

In their reply, defendants argue that Horton's original complaint raised a claim of "deliberate indifference" and made no mention of a meritorious administrative remedy procedure procedure grievance. ECF No. 20. They move for the entry of judgment in their favor.

## IV. Analysis

Horton's § 1983 deliberate indifference claim against defendant Wexford is subject to dismissal. As argued by Wexford, Eighth Amendment claims may not be raised against it as a corporate entity as it cannot be held liable under 42 U.S.C. § 1983. The court agrees. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondent superior*. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009). A § 1983 claim may not be raised against Wexford.

Horton's Eighth Amendment claim against defendants Beeman and Gilmore fares no better. The record shows that over the course of the six-month period in question he was seen by nurses and physicians and his repeated requests for refills of his over-the-counter and non-formulary medications were primarily responded to and renewed by health care personnel. He routinely received the pain medications Tramadol and Gabapentin and his prescription for

11

Acetaminophen was available to him through the sick-call process. The court finds no Eighth Amendment violation on the part of defendants.

The court observes, however, that for a brief period from March 18, 2016 to March 31, 2016, Horton's Tramadol medication was not renewed. It does not appear that this inaction occurred due to intentional actions on the part of medical staff, but was, at most, a "mistake" which occurred during the ordering of non-formulary medications. In any event, this occurrence is insufficient to set forth a claim of deliberate indifference under the Eighth Amendment violation. Even if the defendants' conduct rose to the level of negligence, such claims are not actionable under § 1983. See Estelle, 429 U.S. at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The court declines to take pendant jurisdiction over the claim and shall remand the tort component of the case to the Circuit Court for Allegany County. A separate Order follows.

Date: *November 6, 2016*

J. Frederick Motz
United States District Judge